**UNITED STATES**

v.

**Anthony MERCADO, 056 44 4748, Aviation Machinist's Mate (Jet Engine Mechanic) Airman Apprentice (E–2), U. S. Navy.**

**NCM 79 0720.**

U. S. Navy Court of Military Review.

Sentence Adjudged 2 March 1979.

Decided 10 Aug. 1979.

LT Lawrence W. Muschamp, JAGC, USN, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before BAUM, Senior Judge, and PRICE and MICHEL, JJ.

MICHEL, Judge:

Pursuant to his pleas, appellant was found guilty of five offenses grounded in unauthorized absence and two drug-related offenses, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, and 934, respectively. His sentence, as this appeal reaches us, extends to a suspended bad-conduct discharge, subsequently vacated for cause by the supervisory authority, and lesser associated penalties.

At the initial Article 39(a)[1] session held on Tuesday, 27 February 1979, appellant indicated that he specifically objected to continued representation by LCDR K, the lawyer with whom he had formed an attorney-client relationship in January 1978, subsequent to the referral of the original charges.[2] Upon inquiry by the military judge as to what attorney appellant wished to represent him, appellant indicated that he was not then prepared to name any such individual. Thereafter, the following scenario developed:

> MJ: And now you think that you are going to get a delay in this trial to go get an individual military counsel?
>
> ACC: No, not for that sir.
>
> MJ: Well, what do you  .   .   . .
>
> ACC: I'm just not satisfied.  I don't have the satisfaction of full representation.
>
> MJ: In what way?  What has he done that you don't like or failed to do that you didn't like that you feel that you should dismiss him for cause?

---

1. UCMJ, art. 39(a), 10 U.S.C. § 839(a) (1970).

2. It appears that charges were referred to trial by special court-martial on 29 December 1977, 12 January 1978, 7 November 1978, 8 December 1978, and 26 December 1978, in an effort by the convening authority to keep up with appellant's continued criminality. Apparently, appellant was only twice informed of the charges against him—on 7 November 1978 and 26 December 1978—and served with a copy of the then existing charges on 6 December 1978 and 31 January 1979.

ACC: Just that I'm not fully . . . . There's certain things we haven't ironed out before I came here to court.

MJ: Do you intend to get a civilian counsel?

ACC: No sir, I can't afford it sir.

MJ: Well, I will give you time to go outside this courtroom now and come back in here and you have half an hour to come up with a name of a counsel. Your counsel is to make any phone calls necessary to find out if that person is available. I don't think that you are acting in good faith and I'll put it on the record. There is no reason for a person to wait until the day of trial to come in here and ask for additional counsel when the government has brought in witnesses from around the world. You were supposed to be at trial last week. It would have been appropriate had you asked for counsel some time before today. I will give you time to go out and consult with your counsel and then you come back and tell me who you want and we'll find out if he's available.

What is the government situation on witnesses?

TC: Your Honor, there are four witnesses here today—three NIS agents. One is from the Constellation which is homeported at Subic Bay in the Philippines. One is from Washington, D.C. One is from Memphis, Tennessee. The civilian witness—I'm sorry, the non-NIS witness is a Hull Technician Chief who is from Memphis, Tennessee, as well. They are here for the day and expect to be able to return at the close of day having performed their duties in line with this court.

MJ: Were any of these people brought in for trial last week?

TC: Yes, sir. We were able to stop the three from CONUS but we were not able to stop the NIS agent from Subic because of the length of time it takes to get here from there. He did arrive here and reported to my office last week and was sent back. However, we caught him in Memphis on his way back to Subic. We were able to keep him in the area when we discovered that there would be a chance to go back into court this week.

MJ: When did it first come to the defense counsel's attention this man was dissatisfied with his counsel?

DC: Last week Friday, [23 February 1979] your honor.

MJ: Excuse me?

DC: Last week Friday.

MJ: Why wasn't the court made aware of it?

DC: Because I could not confirm that due to his nonattendance at appointments until this morning, your Honor. I have not seen my client since Thursday of last week.

MJ: Don't you think professional courtesy would have dictated that you tell the government counsel that this problem existed.

DC: I did, you Honor, yesterday.

MJ: Yesterday?

DC: Yes, sir.

The military judge, concerned over the posture of the case, subsequently granted a recess in order to afford appellant an opportunity to secure the services of a surrogate defense counsel, and admonished the parties:

MJ: Well, I am very disappointed in the performance of both counsel. I'm disappointed in the way this thing has run. It's terribly unprofessional. When you are told to be in court at 9 o'clock and then show up at 10 o'clock without having the courtesy to tell the court you are going to be late I'm not impressed.

We will take a recess at this time, [1015] until 1045 and when you come back I expect to have the name and preliminary indication of the availability of the defense counsel. I would suggest strongly that you find a counsel that is going to be available within the next couple or three days, because gentlemen that's when we're going to trial. The court stands in recess until 1045.

It is this mandate, which appellate defense counsel terms "bullying tactics," which forms the predicate for appellant's assertion

of prejudicial error here. We decline to find either prejudice or error, and affirm.

This Court has recently evidenced its awareness of and sensitivity to the interface created by the often conflicting consideration of an accused's right to counsel and the Government's need to expedite the trial of cases within the military criminal justice system. *See United States v. Furgason*, 6 MJ 844 (N.C.M.R.1979). This case differs from *Furgason* in several material respects, however, all of which combine to produce a different result from our disposition of that case. Here, appellant was, in fact, given time to secure the services of an individual military counsel of his choice; appellant verbalized his satisfaction with that lawyer's services when the trial resumed three days after the recess on 27 February 1979; *appellant maintained his originally detailed defense counsel, in addition to his individual military defense counsel, throughout the trial*; appellant's counsel negotiated a favorable pretrial agreement with the convening authority; *appellant pled guilty to the allegations against him*; and appellant has never specified how, if at all, the military judge's actions prejudiced him, or, for that matter, what other counsel, if any, he would have selected had he had a longer period of time than that allotted by the trial judge to search out a lawyer whom he perceived would perform to his complete satisfaction. Under the circumstances, we ascribe no misfeasance to the action of the military judge, which simply accelerated appellant's exercise of his right to individual military counsel of his own selection.

According, the findings and sentence, as modified below, are affirmed.

Senior Judge BAUM and Judge PRICE concur.